# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL F. REESE, SR.,**

          **Plaintiff,**

      v.                                                                           **Case No. 18-CV-1041**

**KRONES, INC.,**

          **Defendant.**

## DECISION AND ORDER

**1. Introduction**

Plaintiff Michael Reese filed this action against defendant Krones, Inc., his employer, alleging violations of Title VII of the Civil Rights Act of 1964 for failure to accommodate his disability. (ECF No. 39.) Both Reese (ECF No. 55) and Krones (ECF No. 57) have moved for summary judgment. Reese has also asked the court to strike Krones's corrected documents or to apply Krones's previously filed responses. (ECF No. 79.) The court construes this request as a motion to strike. All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 18.) Briefing on the motions is closed and all are ready for resolution.

**2. Facts and History**

In its motion for summary judgment Krones complied with Civ. L. R. 56(a)(1)(A) and 56(a)(1)(B). (ECF No. 57 at 3-8.) However, by not responding to Krones's proposed findings of fact (ECF No. 58), Reese's response (ECF No. 65) failed to comply with Civ. L. R. 56(b)(2)(B). Accordingly, the court deems Krones's proposed findings of fact admitted. *See* Civ. L. R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment.").

Krones, located in Franklin, Wisconsin, manufactures fully integrated packaging and bottling line systems, as well as integrated brew house and processing systems, IT solutions, and warehouse logistics systems. (ECF No. 58, ¶ 5.) Reese has worked as Maintenance Support Staff in the Facilities Maintenance Department of Krones since April 19, 2010. (*Id.*, ¶ 4.) The job requirements include "lifting/carrying objects weighing a maximum of 50 pounds; climbing, sitting, bending, and reaching; frequent standing and walking; extensive physical exertion approximately 50% of the workday; and using dollies, mowers, floor sweepers, automobiles, trucks, and forklifts to accomplish tasks." (*Id.*, ¶ 8.) Mark Doolittle was Reese's supervisor from December 30, 2012, to March 23, 2017. (*Id.*, ¶ 9.)

Throughout his time at Krones Reese had issues with his performance, attendance, and behavior. (ECF No. 58, ¶ 11.) He was given two written warnings in 2014 about attendance issues and abusing his sick time. (*Id.*, ¶¶ 14-15.) In 2015 Reese hurt his ankle

2

while playing tennis. (*Id.*, ¶ 16.) He told Doolittle about this injury the next day but continued to both work and play tennis. (*Id.*) On December 29, 2015, he was put on work restrictions by Dr. Robbin Papendick, Krones's occupational medicine physician, and Dr. Patrick Spiering, Reese's primary care doctor. (*Id.*, ¶ 18.) Reese was not permitted to climb ladders, climb stairs if carrying anything, lift anything over twenty pounds, and could only squat for one hour each day. (*Id.*) These restrictions were in place until February 2, 2016. (*Id.*) Whenever Krones could, it gave Reese lighter or alternative work or put him on paid leave if there was not work for him to do. (*Id.*, ¶ 20.) Reese was released to work full-time without any restrictions on June 20, 2016. (*Id.*, ¶ 22.) Reese knew he was no longer subject to any work restrictions (*Id.*, ¶ 23), and Krones believed that Reese's ankle and foot were better (*Id.*, ¶ 24).

In July 2016 Reese talked with Doolittle about Krones buying a motorized cart for him to use at work. (ECF No. 58, ¶ 25.) Krones determined that the cart was not in the budget and not something that was used in the department where Reese worked. (*Id.*) Reese never told Krones that having a motorized cart was necessary for him to do his job. (*Id.*, ¶ 30.)

In August 2016 Reese received a warning about his performance and conduct during an emergency for his department. (ECF No. 58, ¶ 27.) During a power outage throughout the facility Reese was not available to help because he was in the basement. (*Id.*)

In January 2017 Reese's ankle was bothering him again, although not to the point where he needed medical attention or work restrictions. (ECF No. 58, ¶ 28.) Reese asked Doolittle about replacing the flooring of the bucket lift. (*Id*.) Krones decided to not replace the flooring because doing so would require replacing the entire bucket lift, which was not within the budget. (*Id*.) Reese never told Krones that replacing the flooring was necessary for him to do his job. (*Id.*, ¶ 30.)

In January and February 2017 Reese was reprimanded for not following directions, not wearing appropriate eye protection, not cleaning up his break area, and not completing his work in a timely manner. (ECF No. 58, ¶¶ 31, 32, 34.) On February 28, 2017, he was suspended for three days "for failing to follow directions, violating the Company's safety standards, and overall performance issues." (*Id.*, ¶ 33.) He was not suspended because of any alleged disability. (*Id.*)

Even though Reese was supposed to return to work on March 2, 2017, he used vacation and sick time and did not return until March 20, 2017. (ECF No. 58, ¶ 36.) On March 20, 2017, one of Reese's jobs was to move twenty-five banker's boxes. (*Id.*, ¶ 37.) This was not the first time Reese had completed this task, and after finishing he worked for the rest of the day. (*Id.*) Reese worked on March 21, 2017, but called in sick the next day. (*Id.*, ¶ 38.) He also called in sick on March 23, 2017, but did come in to complete an incident report. (*Id.*, ¶ 39.) March 23, 2017, was the last day Reese was at work. (*Id.*, ¶ 40.)

On May 25, 2017, Dr. Jamie Edwards told Krones that Reese was "totally disabled due to neck and back pain." (ECF No. 58, ¶ 41.) Dr. Edwards said Reese could return to work in June 2017, depending on how his treatment went. (*Id.*) Reese received short-term disability benefits from Krones's benefit carrier from March 24, 2017, to September 17, 2017, and long-term disability benefits from September 18, 2017, to the present. (*Id.*, ¶¶ 46-47.) Beginning on October 1, 2017, Reese began receiving Social Security disability benefits because it was "found that [Reese] has a long-term medical condition that prevents him from any job for which he is qualified." (*Id.*, ¶ 48.) As of June 26, 2019, Krones's accounting system listed him as an employee on inactive status. (*Id.*, ¶ 49.)

**2.1 EEOC Charge**

Reese filed a discrimination complaint on March 3, 2017, with the Equal Employment Opportunity Commission (EEOC) and the State of Wisconsin Department of Workforce Development Equal Rights Division (ERD). (ECF No. 58, ¶ 50.) His complaint alleged discrimination by Krones on the basis of his age and disability. (ECF No. 58, ¶ 51; ECF No. 62-1 at 1.) It contained the following alleged occurrences of discrimination:

> On 2-24-17, I was very loudly screemed at by two different bosses from 2 different department. I was humiliated because it was unjustified and there were 8 other coworks present. My depression began again. Then on 2-28-17, my boss took me to HR with 4 separate complaints.
>
> By the way, I have a history of depression and both knew it. They must of known how serious my depression is because I broked down and cried hard during a few previous HR confrontation. both acknowledged my injury and

> age and depression while telling me Jeremy, 32 years old, can do recycling at ½ the time. And that I must work faster or my next review will not look good. I was also told all the bosses have complaints.
> …
> It was about 3 years ago, Mark Doolittle just became my new boss in building maintenance. I was having depression problems at home and it was effecting my mood at work. I miss interpreted my bosses instruction on a project. He took me to HR, John Barker, and told him that I cant focus on the task at hand. I began to tell him about my home problems and began crying very hard in front of them both. My depression history was first talked about to them in this meeting. This was a Friday.
> …
> He started yelling very strongly, in front of 5 other co-works, machinest, how I need to take my job more seriously and to stay on the task at hand. I sayed nothing but felt I was going to die. Due to the latest inciddent, they gave me a 3 day spespention without pay.

(ECF No. 62-1 at 2, 4-5 (reprinted as written).) His EEOC complaint did not include a failure to accommodate claim under the Americans with Disabilities Act (ADA) and "alleged no facts that could reasonably be construed as relating to a claim of failure to accommodate." (ECF No. 58, ¶ 52.)

The ERD issued an Initial Determination of No Probable Cause on August 30, 2017. (ECF No. 58, ¶ 54.) The Investigator explained:

> It does not appear that [Krones] discriminated against [Reese] in terms or conditions of employment because of his age or disabilities.
>
> First, it does not appear that [Reese] was harassed for a discriminatory reason.…In this case, while [Reese] appears to be very sensitive to his supervisor's criticism, it does not seem that the criticism was motivated by [Reese]'s age or disabilities that it rises to the level of harassment.
>
> Next, it does not appear that [Reese] was disciplined or suspended for a discriminatory reason. [Krones] explained that [Reese] was disciplined and suspended for failing to follow instructions and safety violations. While

> [Reese] disagreed with [Krone]'s actions, he failed to substantiate that he was treated differently than similarly situated employees. Therefore, there is no reason to believe that [Reese] was disciplined or suspended because of his age or disabilities.

(ECF No. 62-4 at 3-4.)

Reese appealed this Initial Determination to an Administrative Law Judge (ALJ). (ECF No. 58, ¶ 56.) The ALJ had a phone conference with Reese and counsel for Krones during which "[Reese] represented…that he wanted to pursue a claim for failure to reasonably accommodate his alleged disabilities." (*Id.*, ¶ 57.) However, because the Initial Determination contained no findings on this issue,

> [t]he ALJ gave [Reese] forty-five (45) days to (1) get an attorney, (2) show how [Reese's] 3/3/2017 ERD Complaint included an allegation of failure to reasonably accommodate, and/or (3) file an amended complaint (a) adding a failure to reasonably accommodate allegation, (b) identifying when such allegation was first communicated in writing to the ERD, (c) identifying how [Krones] failed to reasonably accommodate his disabilities, and (4) designating medical experts for the hearing.

(*Id.*, ¶ 57.)

Reese submitted a proposed amended complaint to the ALJ on December 15, 2017. (ECF No. 58, ¶ 58.) In it Reese alleged Krones did not purchase a motorized cart for him or replace the bucket lift flooring. (*Id.*) About a month later, on January 12, 2018, Reese sent a letter to the ALJ asking him to dismiss his proposed amended complaint. (*Id.*, ¶ 59.) Reese also sent an e-mail to the ALJ on January 19, 2018, stating that he did not think about the failure to accommodate his disability until he received the Initial Determination of No Probable Cause. (*Id.*, ¶ 60.)

On January 22, 2018, the ALJ sent an e-mail to the parties, finding:

> **The Proposed amendment is rejected except for the addition of "sciatic nerve" as an alleged disability**.…My order stated that the filing of a proposed amended complaint "**identify when that allegation was first communicated in writing to the Equal Rights Division."** Mr. Reese did not do so. Moreover, when I looked in the file for what had been submitted by Mr. Reese what I saw was lengthy and confusing [and] did not clearly make any such claim. **As a result, anything that is alleged to have occurred prior to February 18, 2017 is untimely**. Mr. Reese does not allege any failure to accommodate after February 18, 2017, so no failure to accommodate claim has been alleged in a timely manner in this case.

(ECF No. 62-8 at 1; ECF No. 58, ¶ 61 (emphasis in original).)

Reese filed a Request to Withdraw Complaint with the ERD on February 22, 2018. (ECF No. 58, ¶ 62.) The ALJ dismissed Reese's "complaint with prejudice and without prejudice to any right of [Reese] to 'pursue these claims in any other forum.'" (*Id.*, ¶ 63 (quoting ECF No. 62-10).) After the claim was subsequently transferred to the EEOC, the EEOC issued Reese a Dismissal and Notice of Rights letter on May 22, 2018, and dismissed his complaint. (*Id.*, ¶ 64.) The EEOC's letter stated:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

(ECF No. 62-11 at 1; ECF No. 58, ¶ 64.) The letter also stated that Reese could pursue this action in federal or state court and that "[his] suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge." (ECF No. 62-11 at 2; ECF No. 58, ¶ 65.)

**2.2 Reese's Federal Court Complaint**

Reese filed a complaint in this court on July 9, 2018. (ECF No. 1; ECF No. 58, ¶ 66.) In his complaint Reese alleged that Krones "violated the ADA by failing to accommodate his disability of two torn tendons in his right ankle." (ECF No. 58, ¶ 66.) On November 6, 2018, this court granted Defendant's motion to dismiss the claims against Mark Doolittle and John Barker. (ECF No. 26; ECF No. 58, ¶ 67.)

Reese amended his complaint on December 12, 2018. (ECF No. 39; ECF No. 58, ¶ 68.) He attached his "proposed amended ERD/EEOC complaint, which the ALJ had rejected with the exception of [Reese's] proposed addition of 'sciatic nerve' as another of his alleged disabilities." (ECF No. 58, ¶ 70.) Regarding discriminatory conduct, Reese only checked the "Failure to accommodate my disability" box. (ECF No. 39 at 4; ECF No. 58, ¶ 71.) He said his disability was "[two] torn tendons in [his] right ankle substantially limiting walking, bending, lifting, climbing and work." (ECF No. 39 at 4; ECF No. 58, ¶ 72.) Reese identified discriminatory acts in July 2016 (failure to purchase the motorized cart), January 2017 (failure to replace the bucket lift flooring), and February 2017 (three-day suspension). (ECF No. 39 at 4; ECF No. 58, ¶¶ 73-76.) Reese also alleged that Krones did not accommodate his injury that occurred while lifting boxes on March 20, 2017. (ECF No. 58, ¶ 77.) However, he "admit[ed] he has received short term and long term disability benefits because of this injury." (*Id.*)

9

## 3. Motions for Summary Judgment

### 3.1. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

### 3.2. Analysis

Before filing suit under Title VII, an employee must exhaust his administrative remedies by (1) filing a timely charge of discrimination with the EEOC, and (2) receiving a right-to-sue letter from the EEOC. 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1); *see Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v.*

*W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). "The purpose of this requirement is twofold: to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). "[T]he issue often isn't simply whether or not the plaintiff ever filed an EEOC charge, but rather whether the charge that was timely filed was sufficiently broad to include the claims the plaintiff later raises in court." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). Krones contends that Reese failed to exhaust his administrative remedies with respect to his ADA claim for failure to accommodate because it goes beyond the scope of the charge he filed with the EEOC. (ECF No. 63 at 4-8.)

"[B]ecause most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in [his] complaint." *Cheek*, 31 F.3d at 500 (citing *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)). As such, a Title VII plaintiff may pursue claims that are "like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). *See also Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009) ("This court considers a theory raised in court to fall within the scope of an administrative complaint if it is reasonably related to the

11

charges actually set forth in the administrative filing."). "[I]n order for claims to be deemed related, 'the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*.'" *Teal*, 559 F.3d at 692 (quoting *Cheek*, 31 F.3d at 501) (emphasis in original). "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek*, 31 F.3d at 503.

In EEOC litigation, the charge is the operative document. *See Novitsky v. Am. Consulting Eng'rs., L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999). "Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation." *Id.* However, "[t]here are cases where courts have looked beyond the four corners of the EEOC charge form." *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000). "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502. Any additional allegations found in a document outside the charge, however, "cannot expand the scope of the allegations in [the complainant's] original charge; they only may 'clarify or amplify' the allegations in the charge." *Id.* (citing 29 C.F.R. § 1601.12(b)).

In the administrative charge he filed with the EEOC on March 3, 2017, Reese complained of age and disability discrimination. (ECF No. 62-1 at 1-2, 4-5.) On June 15, 2017, the ERD wrote Reese a letter asking him "to provide a written response to the

information provided by the Respondent." (ECF No. 1-1 at 42.) In his letter, Reese stated, "[a]nother issue is the company policy to accommodate, within reason some ones injuries. When I was recovering from my torn tendon and still working, I asked Mark if are department if they could buy a golf cart for me to use. He said that it's not in our budget." (ECF No. 1-1 at 53 (reprinted as written).) But, as Krones argues, "[t]hat letter was not incorporated into the EEOC [charge], would not have been sent to the employer, and was not considered by the agency in making the decision to deny the charge." (ECF No. 74 at 4.) While Reese may have "intended the agency to investigate the allegations," any claim he was attempting to raise alleging a failure to accommodate did not "'clarify or amplify' the allegations in the charge." Rather, it attempted to add a new allegation.

On December 15, 2017, Reese attempted to amend his administrative charge. (ECF No. 1-1 at 57-63.) Reese stated, "My amended complaint has to do with Discrimination of Accommodations and Discrimination of Not Being Treated as Others." (*Id.* at 58 (reprinted as written).) In this amended complaint he mentioned that Krones did not purchase a cart for him and did not replace the flooring of the bucket lift. (*Id.* at 59-60.) However, on January 22, 2018, the ALJ rejected this amendment by stating, "[t]he proposed amendment is rejected except for the addition of 'sciatic nerve' as an alleged disability." (ECF No. 62-8 at 1.) The ALJ explained that "anything that is alleged to have occurred prior to February 18, 2017 is untimely. Mr. Reese does not allege any failure to accommodate after February 18, 2017, so no failure to accommodate claim has been

13

alleged in a timely manner in this case." *Id.* Therefore, the ALJ rejected Reese's attempt to add a failure to accommodate claim to his charge.

Nevertheless, the complaint Reese filed with this court alleges a failure to accommodate claim under the ADA. (ECF No. 1 at 3-4.) "A claim for failure to accommodate is separate and distinct under the ADA from one of disparate treatment because of a disability." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 897 (7th Cir. 1999). Because there is a different analysis for these two claims, "they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Id.* at 898.

Because Reese's EEOC charge contained no reference to a failure to accommodate, such a claim falls outside of the scope of the EEOC complaint. As a result, Krones is entitled to judgment as a matter of law. The court grants Krones's motion for summary judgment and denies Reese's motion for summary judgment.

4. **Motion to Strike Corrected Documents**

On August 12, 2019, counsel for Krones wrote the court and identified in several of its filings material typographical errors and their corrections. (ECF No. 76.) The errors related to dates in its proposed findings of fact (ECF No. 58), brief in support of its motion for summary judgment (ECF No. 63), and brief in opposition to Reese's motion for summary judgment (ECF No. 69), and to both dates and paragraph numbers in its

response to Reese's list of indisputable material facts (ECF No. 72). (ECF No. 76.) The court requested counsel for Krones to submit corrected documents, which counsel did.

Reese has requested the court to strike Krones's corrected documents or to apply Krones's previously filed responses, a request the court construes as a motion to strike. (ECF No. 79.) Reese argues that "[t]he 'Corrected' documents, filed on August 16, 2019, have been totally revised in fact, law, argument, and content." (*Id.* at 2.) However, Reese provides the court with no specific revisions that he contends warrant being stricken. The court has not done a line-by-line comparison of the original and corrected documents but does note that Krones made the typographical revisions it identified in its letter to the court on August 12, 2019 (ECF No. 76). Without knowledge of any specific instances of complete revisions, the court will deny Reese's motion to strike.

**IT IS THEREFORE ORDERED** that Krones's motion for summary judgment (ECF No. 57) is **granted**, and Reese's motion for summary judgment (ECF No. 55) is **denied.** This action is dismissed. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Reese's motion to strike Krones's corrected documents or to apply Krones's previously filed responses (ECF No. 79) is **denied.**

Dated at Milwaukee, Wisconsin this 3rd day of October, 2019.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge

15